Filed 7/13/26  P. v. Pauls CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION ONE

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> JAMES CHRIS PAULS, <br><br>     Defendant and Appellant. | A172040 <br><br> (Napa County <br> Super. Ct. No. 24CR000934) |

James Chris Pauls appeals from his conviction for three drug-related offenses after the trial court denied his motion for mental health diversion under Penal Code section 1001.36.[1]  We conclude the trial court erred when it denied mental health diversion, conditionally reverse the judgment, and remand the matter for the court to reconsider Pauls's motion.

## I.  BACKGROUND

Around 8:00 p.m. one night in March 2024, a deputy with the Napa County Sheriff's Department heard over dispatch that the driver of a red sports utility vehicle was shining a laser into other vehicles on Highway 12. The deputy located a vehicle matching the one described.  Pauls was in the driver's seat with the engine running.  He was holding a pen laser and confirmed that he had been pointing it out of his car.  The deputy performed

---

[1] Undesignated statutory references are to the Penal Code.

1

a drug and alcohol evaluation and assessed that Pauls was under the influence of a central nervous system stimulant. Another deputy found methamphetamine and two pipes for smoking it in Pauls's car and in his pocket.

Pauls was charged with possession of a controlled substance with qualifying prior convictions (Health & Saf. Code, § 11377, subd. (a)), being under the influence of a controlled substance (*id.*, § 11550, subd. (a)), and possessing controlled substance paraphernalia (*id.*, § 11364, subd. (a)). The information alleged three aggravating circumstances involving prior convictions.

Before trial, Pauls filed a motion for mental health diversion, supported by a diagnosis review by a mental health counselor with Napa County's Health and Human Services Agency.[2] The trial court found the diagnosis supported a prima facie showing that Pauls was eligible for diversion, and the People did not oppose this finding. The court scheduled a hearing on Pauls's suitability for diversion and referred the matter to probation for a supervision report and to the county for a proposed treatment plan and recommendation as to suitability.

After probation filed its report, the People filed an opposition to Pauls's motion. The People argued that Pauls had not provided "an opinion by a

_____

[2] The diagnosis review and other documents supporting Pauls's motion were transmitted to this court as confidential records. Pauls does not divulge detailed facts about his diagnosis in his briefs, and we interpret this to mean he chooses to keep those details confidential. (See Cal. Rules of Court, rule 8.47(c)(1) [publicly filed documents may not "disclose material contained in a confidential record, including a record that, by law, a party may choose be kept confidential in reviewing court proceedings and that the party has chosen to keep confidential"].) Accordingly, we recount in general terms the information considered by the trial court in determining whether to grant mental health diversion.

qualified mental health expert that [his] symptoms . . . will respond to treatment." They urged that Pauls did not appear motivated to comply with treatment, had re-offended while participating in Napa County's Drug Court in 2019, and had failed to complete programming including outpatient treatment with Napa County's Health and Human Services Agency that he attended from 2008 to 2010.

On the day of the suitability hearing, a Napa County clinician and her supervisor filed a letter attaching an unsigned treatment plan for Pauls. The plan provisionally diagnosed mental disorders and indicated that Pauls's symptoms would respond to a course of treatment that included residential treatment. The letter explained that the clinician had been unable to meet with Pauls in person due to health- and court-related scheduling conflicts, but she and her supervisor had communicated with him several times, including at least three phone calls. While Pauls previously said he would only engage in outpatient treatment, he subsequently told the clinician he would be willing to enter a residential program. She planned to meet with Pauls later on the day of the hearing.

The Napa County supervisor appeared at the suitability hearing, as did Pauls. Pauls's counsel argued that he had never received "mental health forward treatment" and there was now an opportunity to place him in residential treatment. The supervisor reported that she was informed Pauls might qualify for residential program "options possibly through [Napa County Alcohol and Drug Services]" but had not confirmed this. She opined that "we don't really have any options other than [a] residential" program to provide Pauls with suitable treatment.

The People focused on Pauls's lack of success in past programming, but also challenged the adequacy of the proposed treatment plan, questioning

3

whether there even was "a plan in place. We just heard he assessed for residential, they don't have any bed for him, don't even know if there's a program that will take him, and then we've got a bunch of boxes checked for attend appointments, take medication, we don't know what, if any, medication." The People argued this was not "a sufficient plan for the Court to decide this is sufficient to meet his individualized treatment needs."

The trial court asked the Napa County supervisor whether the residential treatment that might be available to Pauls was "dependent upon whether he's in, for example, drug court or mental health court or . . . probation supervision," and the supervisor said that it was not. After hearing the parties' argument, the court denied Pauls's motion. The court observed that Pauls had "been practically embedded in the criminal justice system for the better part of the last . . . 15 years or so with multiple convictions, multiple grants of probation, et cetera." The court deemed Pauls unsuitable for diversion based on his poor performance "on higher levels of supervision and treatment," emphasizing that "a lesser form of supervision" was "clearly . . . not what he needs." The court continued, "He needs something more intensive . . . . [G]iven the long history, he needs residential treatment." But the court did not address the potential residential placement it had discussed with the Napa County supervisor. Rather, it concluded Pauls was not "suitable" for diversion "given his repeated failures to comply with other forms of supervision."

The matter proceeded to trial and a jury found Pauls guilty as charged. The trial court suspended the imposition of sentence and granted probation, remanding Pauls to custody "until probation either determines that [he] could be released on an outpatient basis, or released to a residential treatment program."

4

## II. DISCUSSION

### A. *Governing Legal Principles*

Diversion under section 1001.36 postpones criminal proceedings " 'to allow the defendant to undergo mental health treatment,' subject to specified conditions." (*People v. Braden* (2023) 14 Cal.5th 791, 801 (*Braden*).) It is intended to mitigate the entry and reentry of people with mental disorders into the criminal justice system by addressing their unique needs while simultaneously protecting public safety. (§ 1001.35, subds. (a), (c).) A recognition that incarceration accomplishes little to deter lawlessness, but successful mental health treatment helps individuals and makes communities safer, led the Legislature to create and then expand this pretrial diversion. (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 890–891 (*Sarmiento*).)

Felony proceedings may be diverted for up to two years (§ 1001.36, subd. (f)(1)(C)(i)), during which the statute "contemplate[s] an ongoing assessment" to assure the defendant receives "appropriate treatment for [his or her] particular conditions." (*Sarmiento, supra*, 98 Cal.App.5th at p. 892.) If the defendant performs inadequately in the assigned program or engages in specified criminal conduct during diversion, the court shall "hold a hearing to determine whether the criminal proceedings should be reinstated" or "whether the treatment should be modified." (§ 1001.36, subd. (g).)

To qualify for mental health diversion, defendants "must meet the two eligibility criteria under section 1001.36, subdivision (b), and the four suitability criteria set forth in subdivision (c) of that section." (*Gomez v. Superior Court* (2025) 113 Cal.App.5th 671, 685 (*Gomez*).) A defendant is eligible for diversion when he or she has been diagnosed with a qualifying mental disorder and the disorder was a significant factor in the commission

5

of the charged offense.  (§ 1001.36, subd. (b).)  Eligible defendants are *suitable* for diversion where "(1) in the opinion of a qualified mental health expert the defendant's mental disorder would respond to treatment; (2) the defendant consents to diversion and agrees to waive his or her speedy trial rights; (3) the defendant agrees to comply with treatment requirements; and (4) if treated in the community, the defendant will not pose an 'unreasonable risk of danger to public safety' as defined in section 1170.18," which concerns the risk the defendant will commit violent felonies " ' "colloquially referred to as 'super strikes.' " ' " (*People v. Tourville* (2026) 120 Cal.App.5th 439, 452 (*Tourville*).)

"Even when the defendant makes a prima facie showing of meeting the statutory eligibility and suitability criteria, the court may nonetheless exercise its discretion to deny diversion."  (*Gomez, supra,* 113 Cal.App.5th at p. 679.)  "But, this 'residual' discretion must be exercised ' "consistent with the principles and purpose of the governing law," ' " including the "strong legislative preference for treatment of mental health disorders" given the resulting benefits "to both the offending individual and the community." (*Sarmiento, supra,* 98 Cal.App.5th at pp. 892–893.)  "Where the court chooses to exercise this residual discretion to deny diversion, its statement of reasons should reflect consideration of the underlying purposes of the statute and explain why diversion would not meet those goals." (*Id.* at p. 893.)

We review a trial court's ruling on a request for mental health diversion for abuse of discretion.  (*Gomez, supra,* 113 Cal.App.5th at p. 687.) "A court abuses its discretion when it makes an arbitrary decision by applying the wrong legal standard or bases its decision on express or implied factual findings that are not supported by substantial evidence."  (*Tourville, supra*, 120 Cal.App.5th at p. 453.)

## B.    The People's Arguments

The People do not defend the trial court's ruling that Pauls was unsuitable for diversion because of his poor performance under prior supervision and treatment.  Rather, they claim Pauls failed to waive his speedy trial rights and to carry his burden to show a qualified expert had concluded his disorder would respond to treatment.  They urge us to affirm the trial court's ruling as correct in law on these alternative grounds, if incorrect in its reasoning.  (See *People v. Turner* (2020) 10 Cal.5th 786, 807.)

In their first argument, the People seem to claim that Pauls's failure to waive his speedy trial rights *before* the trial court ruled on his contested motion for mental health diversion rendered him unsuitable for diversion. The analysis offered to support this contention is unconvincing.  Section 1001.36 contains no such requirement, and putting the accused to this choice would not further the statute's purpose of increasing diversion.  (See § 1001.35, subd. (a).)

The People rely on dictum in *Morse v. Municipal Court* (1974) 13 Cal.3d 149, 156 (*Morse*), which stated that a different statute, establishing a different procedure involving an investigation by probation, made "a defendant's consent to consideration for diversion contingent upon a simultaneous waiver of speedy trial rights."  (See *ibid.* [under former section 1000.1, " '[i]f the defendant *consents and waives his right to a speedy trial*,' " then " 'the district attorney shall refer the case to the probation department' "].)  But *Morse*'s holding was that the statute allowed defendants to "consent[] to diversion and waive[] [their] right to a speedy trial *at any time prior to the commencement of trial*," so that they could "tender usual pretrial motions" first.  (*Id.* at p. 160.)  *Morse* thus supports a liberal reading of diversion statutes to permit defendants to seek diversion at any point

7

before trial without waiving other rights. Our Supreme Court has interpreted section 1001.36 consistently, noting that its "requirement of a speedy trial waiver conveys [the Legislature's] intent to require that the defendant *request diversion* before the process of adjudicating guilt begins." (*Braden, supra,* 14 Cal.5th at p. 808, fn. 10, italics added [discussing *Morse*].)

Here, Pauls "consent[ed] to move forward with mental health diversion" while maintaining his speedy trial posture in the event diversion was denied. The People did not object, and acknowledged "it would appear [Pauls] will consent to diversion if it is granted." Nothing in the record suggests that Pauls would not have waived his speedy trial rights if offered diversion, and the trial court made no such finding. Since the record does not support the People's position on this point, we cannot affirm the trial court's ruling on this alternative ground. (See *People v. Smith* (2016) 1 Cal.App.5th 266, 275 [where the People did not contest the defendant's assertion in a signed petition, the record did not support affirming the trial court's order denying his petition for recall of sentence on the ground that he failed to carry his prima facie burden].)

The People's argument that Pauls did not show a qualified expert had concluded his symptoms would respond to treatment suffers from a similar problem. As we have recounted, a clinician prepared a draft treatment plan for Pauls indicating that his symptoms would respond to treatment, based on her review of his medical and other records and telephone conversations she and her supervisor had with Pauls. (See generally § 1001.36, subd. (b)(1) [in diagnosing the defendant, an "expert may rely on an examination of the defendant, the defendant's medical records, arrest reports, or any other relevant evidence"].) The clinician filed the draft treatment plan with a cover letter stating that she planned to meet with Pauls on the day of the

8

suitability hearing to review the plan with him. At the hearing, the supervisor stated that a residential treatment program was an option for Pauls if available. This was adequate to establish the clinician and her supervisor's opinions that Pauls's symptoms would respond to residential treatment. (See *Gomez, supra,* 113 Cal.App.5th at p. 689 [crisis assessment setting forth a diagnosis and stating defendant was " 'being referred to mental health services at [a specified facility] which is the appropriate level of care' " satisfied defendant's burden under section 1001.36, subdivision (c)(1)].) As with the speedy trial waiver, the record does not support the People's argument that the clinician and her supervisor's conclusions that Pauls's symptoms would respond to treatment were not fully formed, and reflects that the treatment plan could have been promptly executed had the trial court indicated it was inclined to deny diversion on the ground that the plan was only tentative.

In sum, the record does not support the alternative theories the People advance as grounds to uphold the trial court's ruling. We turn to the court's stated reasoning.

## C.    *The Trial Court's Reasoning*

The trial court agreed with the Napa County representatives that Pauls "need[ed] residential treatment." While it was unconfirmed at the suitability hearing that Pauls would qualify for a residential program, the county representatives were informed that he might, and the court made no contrary finding.

Insofar as the trial court denied diversion based on an assumption that no residential program could provide services to Pauls, this was in error. The court must assess whether a recommended program is able to meet the defendant's needs as diversion progresses (§ 1001.36, subd. (f)(1)(A)(i)), but

9

this "is not an additional eligibility or suitability requirement the defendant must meet." (*Sarmiento, supra,* 98 Cal.App.5th at p. 892.)  To the contrary, the diversion statute is clear that a given program's present inability to serve the defendant "does not constitute evidence that the defendant is unqualified or unsuitable for diversion." (§ 1001.36. subd. (f)(1)(A)(iii).)  The statute does not specify what the court should do if it cannot find a program that is able to satisfy a defendant's treatment plan within the time permitted for diversion. But we need not resolve that issue here because the court made no such finding and the record suggests there might have been a suitable program for Pauls.

That brings us to the trial court's express reason for denying diversion: Pauls was not "suitable" for diversion "given his repeated failures to comply with *other forms* of supervision." (Italics added.)  *Sarmiento* held it was an abuse of discretion to deny diversion based on such reasoning, whether on the ground that the defendant's symptoms would not respond to treatment (§ 1001.36, subd. (c)(1)) or on the ground that the recommended treatment plan would not meet his or her needs (*id.*, subd. (f)(1)(A)(i)).  In *Sarmiento*, the trial court denied diversion based mainly on "its assessment that [the defendant] had failed in two prior attempts" at treatment for substance abuse (including residential treatment), "as evidenced by the fact that she relapsed and thereafter resumed her criminal behavior." (*Sarmiento, supra,* 98 Cal.App.5th at pp. 888, 893.)  The Court of Appeal held this was error where the treatment proposed for diversion was meaningfully different: instead of substance abuse treatment alone, the proposal "expressly linked residential substance abuse treatment with psychiatric medication and psychotherapy addressing the [defendant's previously] untreated" mental health conditions.  (*Id.* at p. 894.)

10

Here, as in *Sarmiento*, the People introduced no expert opinion or other evidence to show that Pauls's failure at other forms of treatment meant the more comprehensive, residential treatment proposed by the clinician would yield the same result. (See also *Siam v. Superior Court* (2026) 118 Cal.App.5th 67, 82 [trial court improperly disregarded expert opinion that defendant's symptoms would respond to treatment based on its own belief that the defendant "had a history of declining, and not complying with, treatment"].) Even setting aside the provisional diagnoses Pauls seems to have received little to no treatment for in the past, there is no indication that he previously participated in residential treatment for his confirmed diagnosis, which was central to the plan recommended in connection with diversion. Indeed, the trial court opined that residential treatment was exactly what Pauls needed. Its conflicting conclusion that Pauls was unsuitable for diversion because he was unsuccessful in other, non-residential programs is unsupported by substantial evidence.

Finally, while the trial court retained discretion to deny diversion even where the statutory requirements were satisfied, it was bound to exercise that discretion consistent with the statute's purposes, including the "strong legislative preference for treatment of mental health disorders" to benefit "both the offending individual and the community." (*Sarmiento, supra,* 98 Cal.App.5th at pp. 892–893.) The court was required to "explain why diversion would not meet [the statute's] goals" in order to deny diversion under its residual discretion. (*Id.* at p. 893.) It made no attempt to do so here, and again, its conclusion that Pauls needed residential treatment cannot be reconciled with its decision to deny diversion to facilitate his placement in such treatment—apparently for the first time—while honoring the statute's goals.

While it was reasonable for the trial court to doubt that Pauls's longstanding inability to comply with treatment could be entirely resolved in diversion, the statute does not require a ready or perfect cure, but only a showing that the defendant's symptoms "would respond to mental health treatment." (§ 1001.36, subd. (c)(1).) There is no "requirement that a court find a defendant will be rehabilitated within a specified period of time in order to be suitable for diversion." (*Tourville, supra*, 120 Cal.App.5th at p. 462.) And the statute takes a broad view of success in diversion, specifying that a court may find adequate performance "if the defendant has substantially complied with the requirements of diversion, has avoided significant new violations of law unrelated to the defendant's mental health condition, and has a plan in place for long-term mental health care." (§ 1001.36, subd. (h).)[3] As *Tourville* emphasized, it would "turn[] the statute on its head" to assume treatment will not succeed instead of attempting it "and only reinstating criminal proceedings if it does not," as the statute contemplates. (*Tourville*, at p. 462.) It is likewise "directly at odds with the statute's purpose" to require a defendant to suffer a conviction to obtain necessary treatment, especially where the community treatment options available at sentencing would be the same ones available in diversion, as may have been the case here. (*Id.* at pp. 445–446.)

The trial court abused its discretion in denying Pauls's motion for diversion, whether by assuming no residential program could serve him or

---

[3] In this regard, we echo *Sarmiento*'s observation that "relapse following drug treatment does not necessarily mean that the participant 'failed' or that treatment was 'unsuccessful.'" (*Sarmiento, supra,* 98 Cal.App.5th at p. 893.) "[L]ike other chronic health conditions, treatment for substance abuse disorders 'should be ongoing and should be adjusted based on how the patient responds'" (*id.* at p. 893, fn. 7)—the very approach that section 1001.36 directs.

requiring Pauls to prove the opposite at the suitability hearing, or by finding that Pauls's symptoms would not respond to a treatment plan including residential treatment based on his performance in other, non-residential programs.

## D.    *Proceedings on Remand*

Under the circumstances, we will conditionally reverse the judgment and remand the matter for the trial court to reconsider Pauls's motion for mental health diversion, "bearing in mind the statutory principles and purpose of the . . . statute," including the goal of "promoting increased diversion of individuals with mental disorders to mitigate their entry and reentry into the criminal justice system." (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 892, 895.)  We express no opinion as to how the court should rule on remand.[4]  Still, we observe that denying diversion based on a defendant's treatment history may be a proper exercise of discretion if the proposed treatment plan is no different from one that failed in the past.  (See *People v. Russo* (2026) 121 Cal.App.5th 134, 139.)  On the other hand, a defendant's failure to benefit from past treatment may not support an order denying diversion where the proposed treatment plan adequately addresses the defendant's mental health needs and is "significantly different from" the prior treatment.  (*Sarmiento, supra*, 98 Cal.App.5th at pp. 894–895.)

## III.  DISPOSITION

The judgment is conditionally reversed.  The matter is remanded to the superior court with directions to conduct another suitability hearing under section 1001.36, no later than 90 days from the filing of the remittitur,

---

[4] We likewise express no opinion about the recent enactment of Assembly Bill No. 46 on June 29, 2026, and its effect, if any, on this case.

13

exercising its discretion in conformity with the principles discussed in this opinion.

If the trial court determines that Pauls qualifies for diversion under section 1001.36, then the court may grant diversion. If Pauls successfully completes diversion, the court shall dismiss the charges. If the court denies diversion, or Pauls does not successfully complete diversion, then his convictions and sentence shall be reinstated.

_____
SMILEY, J.

WE CONCUR:


_____
HUMES, P. J.


_____
BANKE, J.

*People v. Pauls* / A172040

15